UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                                                     Docket No.: 16 Cr. 692 (JMF)

    - against –

MARTINS APSKALNS,

        Defendant.
------------------------------------------------------------X

# MEMORANDUM IN AID OF SENTENCING
# ON BEHALF OF MARTINS APSKALNS

ERIC FRANZ, ESQ.
Law Offices of Eric Franz, P.L.L.C.
*Attorney for Martins Apskalns*
220 Old Country Road
Mineola, New York 11501
(212) 355-2200
eric@efranzlaw.com

CHRISTOPHER WRIGHT, ESQ.
Wright Law L.L.C.
*Attorney for Martins Apskalns*
305 Broadway, Ste. 1001
New York, New York 10007
(212) 822-1419
Chris@WrightMarinelli.com

## INTRODUCTION

We respectfully submit this Memorandum in Aid of Sentencing on behalf of Martins Apskalns ("Martins") who is scheduled to be sentenced by Your Honor on January 29, 2020, following his September 25, 2019, guilty plea to Count One of the Indictment, Conspiracy to Commit Bank and Wire Fraud in violation of 18 U.S.C. § 1349.

Martins pled guilty pursuant to a plea agreement which provides that his sentencing guidelines offense level is 29 and that he is in Criminal History Category I. The Presentence Report ("PSR") is in accord with this calculation. *PSR ¶¶ 44; 47.* With an offense level of 29, and since Martins is in Criminal History Category I, the advisory guidelines range is 87-108 months. *PSR ¶ 75.*

We recognize that the Court may determine that Martins' criminal history category is understated since he has two prior foreign convictions which are excluded from his criminal history calculation (U.S.S.G. §4A1.2(h)) but, for the following reasons, urge the Court to sentence Martins to no more than 87 months -- the bottom of his stipulated guidelines range, as provided for in his plea agreement, a sentence which we respectfully submit is "sufficient but not greater than necessary". *See* 18 U.S.C. § 3553(a).[1]

## LEGAL STANDARD

As this Court is undoubtedly aware, the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), has reshaped the way a sentencing judge can impose a sentence. The sentencing court may consider the guideline range, as well as any basis to depart

---

[1] Your Honor has already sentenced numerous co-conspirators in this case and is therefore intimately aware of the facts and its procedural background so we will endeavor to be brief and succinct.

1

from that range. However, the court is no longer required to impose a sentence within that range. In fact, the federal sentencing guidelines are but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). The guidelines are only the "starting point and initial benchmark…" *Id., citing Gall v. United States*, 552 U.S. 38, 50 (2007). "Sentencing courts are not to 'presume that the Guidelines range is reasonable,' and instead they 'must make an individualized assessment based on the facts presented.'" *United States v. Thavaraja*, 740 F.3d 253, 259 (2d Cir. 2014) (internal citations omitted). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the § 3553(a) factors. *Id., Kimbrough*, 552 U.S. at 109, *citing Gall*, 552 U.S. at 51.

In determining a sentence that is "sufficient, but not greater than necessary," the first of those factors the judge must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Without a doubt, the breadth of this factor alone extends far beyond the guidelines and implores the sentencing judge to consider the unique circumstances and characteristics of the defendant in each case. A consideration of those characteristics, along with the remaining six factors,[2] may render sentences that do not fit within the guidelines, yet are fair and meet the goals of sentencing set forth in § 3553(a)(2).

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall*, at 50. Rather, the Court must make an individualized assessment based on the facts presented. From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing. . ."

---

[2] The seven factors are (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need for the sentence imposed to reflect the goals of sentencing set forth in § 3553(a)(2); (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a).

*Kimbrough*, 552 U.S. at 101, *citing* 18 U.S.C. § 3553(a). The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. § 3553(a). Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, at 54; *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

## ARGUMENT

As detailed below, we respectfully submit that a sentence at the bottom of Martins' stipulated guidelines range would be "sufficient but not greater than necessary" as Martins' post-offense conduct; to wit: his prompt acceptance of responsibility and waiver of extradition proceedings, his participation in a panoply of prison programs while awaiting sentencing, along with his sincere contrition, as well as his estrangement from his family who remain in Latvia, all militate in favor of a sentence no greater than 87 months.

**Prompt Acceptance of Responsibility**

Martins accepted responsibility for his offense conduct immediately following his November 28, 2018 arrest in Latvia; he waived extradition proceedings and consented to be transported to the United States, provided a recorded confession to U.S. prosecutors and consented to the search of his phone while still in Latvia, and following his December 20, 2018 arraignment in the Southern District of New York, he immediately indicated his desire to plead guilty. However, Martins had to wait a significant time to receive a plea agreement from the government as they were awaiting information concerning the total loss amounts attributable to Martins, and

3

thus, while he may be among the last to be sentenced, it bears emphasis that his desire to plead guilty was immediate. Indeed, attached as Exhibit A is a heartfelt letter from Martins in which he forthrightly acknowledges that he has "committed crimes – not because [he] wanted to hurt people but because [he] was greedy and just tried to take the easy way out." *Ex. A.* Significantly, Martins describes his recognition of his cowardly acts and the impact on his victims. We respectfully submit that Martins letter reveals a man who has recognized the error of his ways and his commitment to change his path and live a law abiding life.

**Personal History and Characteristics**

A.   Martins' Personal Background

Born on May 19, 1985, in the small Latvian town of Kuldiga, Martins had a difficult childhood as his father was often absent from the home; and when he was home he was often drunk and physically abused his mother. *PSR ¶ 52-53.* As a result, his parents divorced when Martins was fourteen years old. *PSR ¶53.* After the divorce, Martins was raised by his mother, who remains supportive of him notwithstanding his current predicament, but he has had only sporadic contact with his father. *PSR ¶54.* Although, his mother is filled "with sadness and regret" about his criminal conduct she has faith that Martins "can turn his life around."[3] *Ex. B at 001-002.*

After high school Martins attended a university in Latvia for two and half years but he withdrew from college and moved to England to work in construction. *PSR ¶ 65.* Martins employment history also includes working as a building inspector, a real estate agent and for 5 years as a construction worker in England. *PSR ¶¶ 66; 67; 68.* A former employer describes

---

[3] Attached as Exhibit B is a collection of letters from Martins' family members, friends and a former employer; they are bated stamped as 001-007 for ease of reference.

4

Martins as being a "reliable and good employee" who took initiative in acquiring "new skills and knowledge." *Ex. B at 003.*

Martins' friend, Andis Volkovs describes him as a "loyal, dedicated and honest person" who extended himself to support Volkovs when he was "in a really dark place emotionally" demonstrating Martins' "big heart." *Ex. B at 004.* This theme is echoed by another friend, Sigita Leja, who writes that despite Martins childhood difficulties, he is a "kind and good human being" and Sigita cherishes the "beautiful and cheerful memories about [them] and the moments spent together." *Ex. B at 006.*

B.   Committed Husband and Loving Father

Martins is married and has a 10 year old son from a prior marriage and a nine year old stepdaughter, with his current wife, Ilze Singele. Both Ilze and Martins' son, A.A., have been declared disabled by the Latvian Ministry of Health; his wife due to a back injury for which she received surgery in 2017 and his son, A.A. suffers from hemiparesis, a weakness which hinders the ability to move on one side of the body, making it hard to perform everyday activities like eating or dressing. *PSR ¶ 56.* Although they are no longer a couple, Martins and A.A.'s mother work together to co-parent A.A. and Martins has played an intimate part in the care and rearing of him. *Ex. B at 001; 007.* Martins' mother writes that he is "a very good father to his son" and that he has "spent a lot of time taking his little son to doctors" and other medical providers. *Ex. B at 001.*

Ilze remains supportive of Martins and desperately wants him to return to her and her nine-year old daughter, who Martins considers his own child. *Ex. B at 007.* Ilze describes Martins as a "caring, family-orientated and very responsible" man, who helped nurse her back to health after her back surgery and was a great boon to her as she struggles with her disability. *Id.* Suffice to

5

say that, admittedly by his own actions, Martins has been estranged from his family during his incarceration causing his wife and children to suffer as they struggle with life's daily challenges.

Martins has been in custody since December 2018 and has been unable to receive any visits from his family as they all reside in Latvia. Tragically, it is virtually certain that Martins and his family will not be able to see one another for several additional years pending the completion of his sentence.

In an effort to return to his family as soon as possible, Martins has agreed to a judicial order of removal pursuant to 8 U.S.C. §1228(c)(5) to facilitate his return to Latvia and we understand that the government will be processing this paperwork.

C.    Post-Arrest Conduct

Martins has been a model prisoner over the last year while in jail with no incident reports whatsoever. *PSR ¶ 9.* He has made the most of his time in jail enrolling in and completing a whole host of classes. As detailed in the PSR at ¶10, Martins completed the following programs:[4]

- time management (12 hours);
- conflict resolution (12 hours),
- conflict resolution corporation training (12 hours),
- lead by example, reverse the trend (26 hours),
- poetry and leisure time activity (9 hours),
- marketing basics corporation training (12 hours),
- leadership and influence (12 hours);
- developing creativity (12 hours);
- 10 soft skills you need (12 hours)

---

[4] Attached as Exhibit C are Certificates of Completion and an Education Transcript issued by the Metropolitan Correctional Center for the referenced courses.

In addition, Martins completed a dozen one-hour courses on an array of subjects such as natural sciences and history, is currently enrolled in a G.E.D. preparation course and has worked as a suicide watch companion orderly while in custody. *PSR ¶10; Ex. C, D.*[5]

Demonstrative of Martins' productive conduct while in jail is the enclosed letter from Antonio Hendrickson who runs a prison-based self-improvement program. *Ex. E.*[6] Martins completed this eight-week course where he was trained as a mentor in violence prevention and as a counselor to help fellow inmates with emotional support. *Id.* Mr. Hendrickson writes that Martins "will be very instrumental with the progress of the program and willingly assist where he's needed. It will be an absolute pleasure to work with him as a volunteer with our team." *Id.*

Martins' active involvement in the above programs has provided him with a measure of reflection into his own criminal behavior; "my crimes were cowardly – I did them from afar – shielded from looking into the eyes of [victims]… I am disgusted with who I was and what I did and can only say that I have learned that I must become a new person. I must redeem myself." *Ex. A.*

We respectfully submit that Martins' commitment to embrace as many programs as possible demonstrates that he is on the path of rehabilitation and is not beyond redemption.

**18 U.S.C. § 3553(a)(6): Sentence Consistent with Similarly Situated Defendants**

We respectfully submit that a sentence no greater than 87 months would be appropriate for Martins and suggest that the sentences imposed on similarly situated codefendants support this request. In this regard, we draw the Court's attention to the sentences imposed on Emils Mors,

---

[5] Attached as Exhibit D is Martins' Certificate of Achievement in Suicide Prevention.
[6] Attached as Exhibit E is a letter from Antonio Hendrickson, the founder and CEO of Lead by Example & Reverse the Trend.

Kristaps Bereznics and Janis Klava, all who were alleged to be managers or supervisors of the criminal scheme.

Emils Mors, who absconded after his arrest and rejoined the conspiracy, had a Guidelines range of 57-71 months and was sentenced to 57 months. *See United States v. Mors*, 16 CR 692 (JMF), ECF No. 47 at 3 (Sentencing Memo by Government); *PSR ¶ 6*. Kristaps Bereznics who played a "critical supervisory role" in the conspiracy, and pled guilty to an additional charge of aggravated identity theft for using a fake passport to open bank accounts had a Guidelines range of 81-95 months, was sentenced to 66 months. *See United States v. Kristaps Bereznics*, 16 CR 692 (JMF), ECF No. 78 at 2-4, (Sentencing Submission by Government); *PSR ¶ 6*.  Janis Klava who organized and managed "money mules" of the conspiracy, had a Guidelines range of 57-71 months was sentenced to 66 months. *See United States v. Klava,* 16 CR 692 (JMF), ECF No. 89 at 2-3 (Sentencing Submission by Government); *PSR ¶ 6*.

We therefore submit that a sentence at the bottom of Martins' guidelines range would be consistent with the sentences imposed on similarly situated codefendants.

Furthermore, while Martins' guidelines range is primarily driven by the losses caused by his portion of the conspiracy, it bears emphasis that he did not personally derive as much money as many of his codefendants.  Martins' forfeiture amount is $163,900.04 -- significantly less than the following codefendants:

- Madars Jankevics who had a forfeiture amount of $403,372, a guideline range of 41 to 51 months, was sentenced to 51 months. *See United States v. Jankevics,* 16 CR 692 (JMF), ECF No. 244 at 3 (Sentencing Submission by Government); *PSR ¶ 6.*
- Ivars Ozols, who had a forfeiture amount of $234,522, a guideline range of 41 to 51 months, was sentenced to 39 months. *See United States v. Ozols,* 16 CR 692 (JMF); ECF No. 221 at 1 (Sentencing Submission by Government); *PSR ¶ 6.*

• Janis Berns, who had a forfeiture amount of $296,900, a guideline range of 33 – 41 months, was sentenced to 1 year and 1 day. *See United States v. Berns,* 16 CR 692 (JMF); ECF No. 339 at 1; *PSR ¶ 6.*

• Valters Volksons, who had a forfeiture amount of $206,050, a guideline range of 27 – 33 months, was sentenced to 1 year and 1 day. *See United States v. Volksons,* 16 CR 692 (JMF); ECF No. 335 at 1; *PSR ¶ 6.*

While we recognize that the amount of money gained by an individual defendant does not trump the amount of losses attributable to them for purposes of the sentencing guidelines, we respectfully submit that Martins' receipt of less money than many of his codefendants is a factor which this Court may consider in fashioning the appropriate sentence.

## Conclusion

We respectfully submit that for the reasons stated herein that a sentence at the bottom of Mr. Apskalns' advisory guideline range is appropriate. Although Martins has committed a serious offense, his prompt acceptance of responsibility, personal history and his impressive behavior over the last year while in custody portray a humbled man who has learned his lesson and is committed to continue down the long road to redemption.